Filed 4/26/22  In re J.B. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re J.B. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E077873 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ1900467) |
| v. | OPINION |
| L.B., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Cheryl C. Murphy, Judge. Conditionally reversed and remanded with directions.

Patricia K. Saucier, under appointment by the Court of Appeal, for Defendant and Appellant.

Gregory P. Priamos, County Counsel, and Teresa K.B. Beecham and Catherine E. Rupp, Deputy County Counsel, for Plaintiff and Respondent.

1

L.B. (mother) appeals the termination of her parental rights. (Welf. and Inst. Code, § 300, subds. (b) & (g), unlabeled statutory citations refer to this code.) She argues the court erred in concluding the Riverside County Department of Public Social Services (the department) conducted a sufficient inquiry into the minors' Indian ancestry as required under the Indian Child Welfare Act (ICWA). We agree and therefore conditionally reverse and remand with directions that the department complete its initial inquiry.

**I**

**FACTS**

The subjects of this dependency are mother's three children—J.B. (born 2007), N.B. (born 2013), and O.B. (born 2017). On May 17, 2019, the department received a referral alleging the children were at risk of neglect. On July 24, the department interviewed both parents, and both denied having Indian ancestry.

On August 14, 2019, the department filed a petition under section 300, subdivision (b).

On August 20, 2019, mother filed an ICWA-020 form (Judicial Council Forms, form ICWA-020 (ICWA-020)) in which she checked the box stating, "I have no Indian ancestry as far as I know." That same day mother's counsel told the judge, "Mother claims no Indian ancestry." The children's father also filled out an ICWA-020 form claiming no knowledge of any Indian ancestry, and his counsel told the judge, "[t]here is no ICWA." The judge found the department "conducted a sufficient inquiry regarding

2

whether the child/children may have Indian ancestry," and concluded ICWA didn't apply.

As of September 4, 2019, mother lived with the children's maternal grandmother and one maternal aunt. The children also have a maternal aunt in Georgia.

The judge held a contested jurisdiction and disposition hearing on November 21, 2019. The judge sustained the allegations in the petition, removed the children from the parents, and ordered reunification services for the parents. She also found again that the department conducted a sufficient inquiry under ICWA, and ICWA didn't apply.

A social worker met with mother on January 6, 2020, and noted mother "reports no Native American heritage."

The judge held a contested six-month review hearing in July 2020. The judge again found the department conducted sufficient inquiry into the children's ancestry, "and there is no new information to indicate that ICWA may now apply."

The department submitted a 12-month status review report in September 2020 in which mother again denied Indian ancestry. The paternal grandparents also denied any Indian ancestry on father's side.

The judge held a contested 12-month review hearing on October 14, 2020. Once again, she found no new information that ICWA applied.

In November 2020, Mother again denied Indian ancestry.

The judge held a contested 18-month status review hearing on February 9, 2021, and again found there was no new information that ICWA applied. The judge also

concluded the children's "continued placement outside of the home of the parents [i]s necessary and appropriate," and terminated reunification services.

On September 9, 2021, the judge held a hearing under section 366.26 to determine a permanent placement plan for the children. She ultimately terminated mother's parental rights and made the children available for adoption.

Mother timely appealed the order terminating her parental rights.

## II

## ANALYSIS

Mother argues the department failed to conduct a sufficient inquiry into whether ICWA applied to her children and the court erred in concluding it did.

"[W]e review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order. [Citations.] We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance." (*In re A.M.* (2020) 47 Cal.App.5th 303, 314 (*A.M.*).)

ICWA requires that " '[i]n any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe . . . of the pending proceedings and of their right of intervention.' [Citation.] This notice requirement, which is also codified in California law [citation], enables a tribe to determine whether the child is an

4

Indian child and, if so, whether to intervene in or exercise jurisdiction over the proceeding." (*In re Isaiah W.* (2016) 1 Cal.5th 1, 5.) "There are two separate ICWA requirements which are sometimes conflated: the obligation to give notice to a tribe, and the obligation to conduct further inquiry to determine whether notice is necessary. Notice to a tribe is required, under federal and state law, when the court knows or has reason to know the child *is* an Indian child." (*A.M.*, *supra*, 47 Cal.App.5th at p. 315.) In order to determine whether such notice is necessary, California law states, "[t]he court, county welfare department, and the probation department have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a).) Though federal law obligates courts to conduct this inquiry, California state law goes further by imposing this obligation on social services agencies as well. (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 741-742 (*Benjamin M.*).)

" 'The child welfare department's initial duty of inquiry includes "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." ' " (*In re J.S.* (2021) 62 Cal.App.5th 678, 686; see § 224.2, subd. (b).) The law requires further inquiry only " 'when "the court, social worker, or probation officer has reason to believe that an Indian child is involved [or, under Cal. Rules of Court, rule 5.481(a)(4), 'may be involved'] in a proceeding . . . ." ' " (*Ibid.*) " 'When that

5

["reason to believe"] threshold is reached, the requisite "further inquiry" "includes: (1) interviewing the parents and extended family members; (2) contacting the Bureau of Indian Affairs and State Department of Social Services; and (3) contacting tribes the child may be affiliated with, and anyone else, that might have information regarding the child's membership or eligibility in a tribe." ' " (*Ibid.*) Thus there are two types of inquiry relevant entities are required to conduct: an initial inquiry, which is always required, and a further inquiry, which is required only when the relevant entity has reason to believe an Indian child is or may be involved in the proceeding.

Mother argues the department failed at the first step, the initial inquiry, because they only asked her about potential Indian heritage and failed to ask the extended family members on her side of the family. Mother argues the department should have at least tried to interview the maternal grandmother and the maternal aunts.

We agree with mother that this was error. As the department acknowledges, section 224.2 subdivision (b), requires social workers to interview extended family members about whether they have Indian ancestry. Failing to do so is error. (*In re Darian R.* (2022) 75 Cal.App.5th 502, 509.) At minimum, the maternal grandmother and maternal aunts are relevant individuals in this inquiry.

However, when an appeal concerns "the *agency's* duty of initial inquiry, only state law is involved. Where a violation is of only state law, we may not reverse unless we find that the error was prejudicial." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742.) This means that "in ICWA cases, a court must reverse where the record demonstrates

6

that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Id.* at p. 744.) Thus, though mother correctly contends the department failed in its duty to interview her extended relatives—particularly the maternal grandmother and maternal aunts—we must still determine whether this error prejudiced mother.

We conclude it did. There is no question the information the maternal grandmother and at least one maternal aunt had was readily obtainable and likely to bear on the children's Indian status. Mother lived with the maternal grandmother and aunt for at least a portion of the dependency, so the department could have interviewed either easily. Neither was difficult to locate, nor estranged from mother, nor otherwise unlikely to have the information the department was required to seek. In short, there is no good excuse for why the department did not seek this information, and good reason to believe the information would be relevant. Therefore, the department's failure to obtain the information was prejudicial.

The department argues the error was not prejudicial because mother denied having any Indian ancestry at least four, possibly five times. However, section 224.2, subdivision (b), "requires the [d]epartment to ask, as part of its initial duty of inquiry, extended family members (including the biological grandparents) whether the child is or may be an Indian child," and nothing "relieves the [d]epartment of its broad duty to seek that information . . . simply because a parent states on the ICWA-020 form . . . 'I have no

7

Indian ancestry as far as I know.' " (*In re Y.W.* (2021) 70 Cal.App.5th 542, 554.) "Such a rule ignores the reality that parents may not know their possible relationship with or connection to an Indian tribe." (*Id.* at p. 554.) Moreover, the department's "position ignores the express obligation that section 224.2, subdivision (b), imposes on the [d]epartment to inquire of a child's extended family members—regardless of whether the parents deny Indian ancestry." (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 431 (*Antonio R.*).)

The department also argues that because mother lived with the maternal grandmother and one of her sisters, these relatives are unlikely to provide any information mother doesn't already know. This may be true. However, being either physically or emotionally close to someone doesn't necessarily entail open communication on a subject like ancestry. Even very close family members can still discover new things about one another or their own family history, especially if they never thought to ask. Indeed, other courts have dealt with circumstances where parents denied Indian ancestry because they didn't know the child's still living great-grandmother was a current member of a tribe. (See, e.g. *In re S.R.* (2021) 64 Cal.App.5th 303, 314.)

Nor could we reasonably infer mother asked either of these family members herself before denying her Indian ancestry, as there is no evidence suggesting she did or didn't. Absent some evidence suggesting mother already asked these family members, or that the information these family members have is unlikely to meaningfully bear on the

8

children's Indian status (one way or the other), the department is obligated to speak to them precisely because we cannot impute knowledge one family member has about their family to all family members. Moreover, it isn't mother's duty to ask her relatives for this information, it's the department's. Without more, the department cannot rely on mother's denials assuming she did the work for them—they must do the investigation themselves.

Finally, the department cannot complain this duty is too onerous or would create too much delay or uncertainty. "The so-called burden on the [d]epartment (to satisfy its responsibilities) cannot justify the potential to break up Indian families given the country's history of doing just that." (*Antonio R.*, *supra*, *76* Cal.App.5th at p. 436.) Moreover "it is the failure of the [d]epartment to satisfy its obligations during the dependency proceeding that creates uncertainty and potential delay because a juvenile court judgment is subject to collateral attack based on later-discovered information that a child is an Indian child." (*Ibid.*)

For these reasons, "[w]here the [d]epartment fails to discharge its initial duty of inquiry under ICWA and related California law, and the juvenile court finds ICWA does not apply notwithstanding the lack of an adequate inquiry, the error is in most circumstances, as here, prejudicial and reversible." (*Antonio R.*, *supra*, 76 Cal.App.5th at p. 435.) Accordingly, we conditionally reverse the order terminating parental rights to permit the department to complete its initial inquiry.

# III

## DISPOSITION

We conditionally reverse the order terminating parental rights. We remand the matter to the juvenile court with directions to comply with the inquiry provisions of ICWA and of sections 224.2 and 224.3 (and, if applicable, the notice provisions as well) by interviewing the maternal grandmother, the maternal aunts, and any other extended maternal family member with information likely to bear meaningfully upon whether the children are Indian children. If, after completing the initial inquiry, neither the department nor the judge has reason to believe or to know the children are Indian children, the judge shall reinstate the order terminating parental rights. If the department or the judge has reason to believe the children are Indian children, the judge shall proceed accordingly.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH _____
                                                        J.

We concur:


RAMIREZ _____
                    P. J.


CODRINGTON _____
                    J.

10